**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
Wheeling

**LARRY ORLANDO,**

        Plaintiff,

**v.**                                **Civil Action No. 5:19cv138**
                                     (Judge Bailey)

**UNITED STATES OF AMERICA**

        Defendant.

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

On March 29, 2019, the plaintiff initiated this case by filing a *pro se* complaint pursuant to the Federal Tort Claims Act ("FTCA").   This matter is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 2, and 28 U.S.C. §§ 1915(e) and 1915(A).

### II. Background

The plaintiff¹ is a federal inmate incarcerated at FCI Gilmer who complains about his medical care at that facility. In particular, he alleges two grounds for relief. First, he alleges that between the dates of August 26, 2016 and July 11, 2017, Alicia Wilson ("Wilson"), a physician's assistant and Linda Carpenter ("Carpenter"), who is a RN, both committed medical malpractice and subjected him to unnecessary pain, suffering, and mental and emotional distress by disregarding his complaints of declining health and failing to provide medications and delaying access to adequate care.   His second

1

allegation is that both Wilson and Carpenter were deliberately negligent by delaying him access to the proper health care specialist for diagnosis and treatment of the symptoms for his worsening condition. For relief, he seeks damages in the amount of $750,000.

Attached to the complaint are a number of medical records consisting of Clinical Encounters at FCI Gilmer. The earliest is dated August 26, 2016 and indicates that plaintiff was seen by Wilson in the chronic care clinic. He stated that he is always congested and coughs up phlegm at will. He indicated that he had no known allergies. He also complained of knee pain.  Wilson's assessment was allergic rhinitis, cause unspecified and hyperlipidemia, mixed. She advised the plaintiff to purchase allergy medicine from the commissary and lab tests were ordered for a general lipid panel. ECF No. 1-1 at p. 4.

On October 27, 2016, the plaintiff was seen by Carpenter at sick call. His chief complaint was a cough. He stated that

> Thick slime is reoccurring between my chest and throat area all day every day. My throat is so irritated from continuously coughing up the stuff that I choke on certain foods and the fluid is interfering with my breathing and yellow balls are coming out of my throat. I've been doing this for 19 months and I have tried the allergy pills like they told me to, nothing helps. The antibiotic that I was on when I was out on writ didn't help either. There is something wrong with me and I am not getting the treatment that I need.

ECF No. 1-1 at p. 6.

Carpenter noted no significant findings and no apparent distress. Moreover, no shortness of breath nor coughing was noted during the encounter. Chest x-rays were ordered. In addition, the plaintiff was instructed to increase fluid intake to thin secretions and continued to use allergy tablets as package directs.

On March 6, 2017, the plaintiff was scheduled for a sick call with Carpenter. He

2

had completed an Inmate Request to Staff form as follows:

> The antibiotic that I was prescribed did not work for me. I'm still
> coughing up a lot of mucus all day every day the problem becomes
> worse when I drink water. It's been two years now that I have been
> dealing with this problem on a daily basis and none of the
> medications or cough medicines from commissary has worked. I
> would like to have a sample of the mucus tested to find out what is
> wrong with me.

Id. at p. 9.  The plaintiff told the medical record staff that he did not want to see the
nurse for sick call; he wanted to see Dr. Sanjuan. He then asked for his ID card back
and refused to be seen by Carpenter. Id.

On April 24, 2017 the plaintiff was seen for a sick call by Carpenter. The plaintiff
indicated that he wanted to see an ear, nose and throat doctor to find out what was
wrong with his right ear which had been in pain for ten years and why mucus was
continually forming in his nose and throat for two years. ECF No. 1-1 at p. 10. The
plaintiff appeared to be in distress and was writhing in pain. His tympanic membrane
was within normal limits as were his ear canals. A small amount of wax was noted in
both ears. He had no complaints of increased tear production and no complaints of sore
throat. His lung sounds were clear bilaterally. A chart review showed that the plaintiff
had started purchasing over-the-counter allergy medications in March 2017. The plaintiff
was instructed to continue using the over-the-counter allergy medications as package
directed and follow-up with provider through the chronic care clinic. Id. at p. 11.

On July 11, 2017, the plaintiff was seen by Wilson for chronic care in the chronic
care clinic. He indicated that he continued to spit up mucus for years and has used
antibiotics for that relief. He also indicated that he purchased allergy medication from
the commissary. However, he maintained that nothing has helped. Wilson noted the

following exchange:

> Feels like something is eating through my throat, there is a coldness, a rawness to it. When I chew certain foods, I gets choke. [What types of food?] Dry type of food. [Have you taken Omeprazole, Ranitidine?] Yes, I have tried all of those, none of them have helped. [Have you had an EGD?] Yes, I had one in 2004--ish. They said I had reflex and polyps.

ECF No. 1-1 at p. 12.   He also complained of having pain from the top of his "butt," down his left leg and that he felt like his knee was popping out. He reported that he had never been diagnosed with sciatica, but the pain is constant, and nothing has helped. He also complained of bilateral knee pain and an x-ray demonstrated mild degenerative joint disease. Wilson's assessment was that of esophageal reflux, hyperlipidemia mixed, and sciatica, unspecified side. Wilson's provisional diagnosis was dysphagia[1].

The next medical records are from St. Joseph's Hospital where the plaintiff was admitted on March 5, 2018 for a chief complaint of dysphagia and anal fistula. Following an examination, the assessment was dysphagia and possible anal fistula. The plan was to perform an EGD[2] examine to assess the fistula and possibly repair it. Surgery was apparently performed that same day. The postoperative diagnosis was GERD, gastritis, pre-pyloric ulcer, duodenitis, perianal abscess, and hemorrhoids. The operative report contains the following description of the procedure:

> The patient was taken to the operating room and placed on the stretcher in the sitting up position. Satisfactory IV sedation was given. The endoscope was inserted into the mouth and advanced to the stomach. The scope was then advanced through the pylorus into the duodenum. The first and second portions of the duodenum more

---

[1] Dysphagia is the medical term used to describe difficulty swallowing.

[2] An upper GI endoscopy of EGD (esophagogastroduodenoscopy) is a procedure to diagnose and treat problems in the upper gastrointestinal tract, The upper GI tract include the esophagus, stomach and the duodenum.

well visualized and were moderately inflamed. The scope was withdrawn into the stomach where a biopsy was taken in the antrum for H-Pylori. There was distal gastritis present with a small pre-pyloric ulcer. The scope was then retroflexed and there was no evidence of hiatal hernia. The scope was withdrawn into the esophagus where there was evidence gastroesophageal reflux disease. The remainder of the esophagus and vocal cords appeared normal.

The patient was then placed in stirrups. Anteriorly the patient had what appeared to be a small area of drainage. This was injected with peroxide and the rectal retractor was placed. There did not appear to be an internal opening from this abscess. The abscess was incised, and a large amount of granulation tissue was cleaned out from the abscess bed. The wound was then packed  with Betadine-soaked gauze. The patient was noted to have moderately inflamed internal hemorrhoids, but no other rectal abnormality was noted. The abscess was injected with 0.25% Marcaine and 1% lidocaine mix. Sterile dressings were applied. The patient tolerated the procedure well and was brought to the recovery room in good condition.

[Doc. 1-1 at 20-21. The plaintiff was discharged that same date. [Id. at 22].

On March 25, 2018, the plaintiff prepared an SF-95, Claim for Damage, injury, or Death which he filed with the Mid Atlantic Regional Office of the BOP. The plaintiff sought $750,000 in damages for the alleged negligent acts and omissions of the United States of America and its failure to provide proper and adequate medical care resulting in his being subjected to several years of pain and suffering, mental and emotional injury, mental anguish, personal humiliation and impairment of normal bodily function. Attached to the form administrative tort claim were approximately eight pages of a handwritten summary of his medical care beginning on May 5, 2015. The plaintiff indicated that he was still experiencing the mucus in his esophagus/nasal areas and had difficulty swallowing. [Doc. 1-2].

On May 9, 2018, the BOP acknowledged receipt of the SF-95. [Doc. 1-6].   By letter dated September 26, 2018, the plaintiff was informed that his claim was denied

because records revealed that he had received appropriate medical treatment. The letter further informed him that if he was not satisfied with the BOP's determination, he had six months from the date of mailing of the letter to bring suit. [Doc. 1-7].

## II. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious.   Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989).  However, the Court must read *pro se* allegations in a liberal fashion.   Haines v. Kerner, 404 U.S. 519, 520 (1972).   A complaint which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous.   See Neitzke, 490 U.S. at 328.  Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[3] or when the claims rely on factual allegations which are "clearly baseless."   Denton v. Hernandez, 504 U.S. 25, 32 (1992).  This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Because the plaintiff is proceeding *pro se*, this Court is required to liberally

---

[3] Id. at 327.

construe his complaint. Erickson v. Pardus, 551 U.S. 89 *2007). Moreover, *pro se* complaints are held to a less stringent standard than those drafted by attorneys. Id.; Gordeon v. Leeke, 574 F.2d 1147  (4th Cir. 1978), and federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Highes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 45 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. Erickson, 511 U.S. at 93 (citing Bell v. Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

However, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); See also Ashcraft v. Iqbal, 556 U.S. 662 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993) or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.  ANALYSIS

### FTCA Statute of Limitations

It is well-established that the United States is immune from suit unless it consents to be sued. See United States v. Testan, 424 U.S. 392 (1976). However, the FTCA waives the federal government's traditional immunity from suit for claims based on the negligence of its employees. 28 U.S.C. § 1346(b)(1). Specifically, "[t]he statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Nonetheless, the FCTA only waives the government's sovereign immunity if certain terms and conditions are met.   Honda v. Clark, 386 U.S. 484 (1967).  One of those conditions is that an FTCA action be filed within two years of the incident or within six months of the final claim denial. 28 U.S.C. § 2401(b).  Title 28 U.S.C. § 2401(b) specifically states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun *within six months after the date of mailing*, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

> Moreover, 28 C.F.R. § 14.9(a) states that that

> **(a)** Final denial of an administrative claim shall be in writing and sent to the claimant, his attorney, or legal representative by certified or registered mail. The notification of final denial may include a statement of the reasons for the denial and **shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification**.

28 CFR § 14.9(a)(emphasis added). Omission of this language from a denial letter prevents the limitations period from running. See Barrett v. United States, No. 86-0053, 1988 U.S. App. LEXIS 20301 * 3 - * 4 (4th Cir. July 5, 1988) (*per curiam*), *citing* Dyniewicz v. United States, 742 F.2 484, 486 (9th Cir. 1984); Martinez v. United States,

728 F.2d 694, 698 (5th Cir. 1984). See also Boyd v. United States, 482  F. Supp. 1126, 1129 (W.D. Pa. 1980) (Governmental failure to comply with the precise requirements of the final denial letter by making plaintiff aware of his rights will preserve a plaintiff's claim).

Here, the plaintiff presented Administrative Claim TRT-MXR-2018-04448 on May 2, 2018,  thereby invoking his administrative remedies. ECF No. 1-6.  The BOP timely denied his claim on September 26, 2018 and advised him that he had six months from that date within which to file suit in federal court. ECF No. 1-7. Therefore, the plaintiff had until March 26, 2018 to file his claim. However, he did not file his claim until March 29, 2019, after the deadline had expired.

The undersigned recognizes that the plaintiff signed his complaint on February 12, 2018, and the letter transmitting the complaint is dated March 24, 2019. Therefore, the plaintiff could argue that the mailbox rule applies.

Although the United States Court of Appeals for the Fourth Circuit has not ruled on the mailbox rule's application to FTCA claims, the majority of courts addressing the issue, including other courts within this District, have concluded that the mailbox rule does not apply to FTCA claims. See, e.g., Blue v. United States, No. 5:12CV121, 2013 WL 1867093, at *3 (N.D. W. Va. May 3, 2013), aff'd, 549 F. App'x 230 (4th Cir. 2014) (Stamp, J.); Boomer v. DeBoo, No. 2:11CV207, 2012 WL 112328 (N.D. W. Va. Jan. 12, 2012) (Bailey, J.) ("'virtually every circuit to have ruled on the issue has held that the mailbox rule does not apply to [FTCA] claims, regardless of whether it might apply to other federal common law claims.'")(quoting Vacek v. United States Postal Serv., 447 F.3d 1248, 1252 (9th Cir. 2006)). "This determination is largely based in the Supreme Court's continued emphasis on the fact that, when Congress waives sovereign

immunity, that waiver must be strictly construed and only defined as the waiver is defined explicitly in the act itself." Blue, No. 5:12CV121, 2013 WL 1867093, at *3 (citing Vacek, 447 F.3d at 1252). The undersigned agrees that the mailbox rule does not apply to the plaintiff FTCA's claims and concludes that the complaint is time barred.

**Equitable Tolling**

In 2015, the Supreme Court held that the FTCA's filing deadline is not jurisdictional and allows for equitable tolling. United States v. Kwai Fun Wong, 135 S.Ct. 1625 (2015) (concluding that "treating the Government like a private person means (among other things) permitting equitable tolling"). Because the FTCA's timeliness requirements are subject to equitable tolling, it is incumbent on "the [d]istrict [c]ourt to decide whether, on the facts of [a given] case, [that particular claimant] is entitled to equitable tolling." Id. at 1638.

"A statute can be equitably tolled only if a plaintiff shows that (1) she pursued her claim with reasonable diligence and (2) extraordinary circumstances prevented her from filing on time." Lucas v. United States, 664 F. App'x 333, 335 (4th Cir. 2016), cert. denied, 137 S. Ct. 2274 (2017) (citing Holland v. Florida, 560 U.S. 631, 649 (2010)). Thus, equitable tolling is an extraordinary remedy "reserved for 'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" Raplee v. United States, 842 F.3d 328, 333 (4th Cir. 2016), cert. denied, 137 S. Ct. 2274 (2017) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)).

Conversely, statutes of limitations are not tolled equitably in cases where the plaintiff has failed, due to his own "blameless ignorance," to file his claim in a timely

manner. <u>Clutter-Johnson v. United States</u>, 242 F. Supp. 3d 477, 485 (S.D. W. Va.), <u>aff'd</u>, 714 F. App'x 205 (4th Cir. 2017) (citing <u>Gould v. United States Dept. of Health and Human Svcs.</u>, 905 F.2d 738, 745–46 (4th Cir. 1990) ("The burden is on plaintiffs to show that due diligence was exercised and that critical information, reasonable investigation notwithstanding, was undiscoverable.")). Further, "[b]ecause § 2401(b) provides a limited waiver of the United States' sovereign immunity," equitable tolling applies only "sparingly." <u>Jackson v. United States</u>, 751 F.3d 712, 719 (6th Cir. 2014). "The party seeking equitable tolling bears the burden of proving entitlement to it." <u>Id.</u>

Regardless of whether the plaintiff pursued his claims diligently, nothing in his complaint shows any "extraordinary circumstances" preventing him from filing on time. In reaching this conclusion, the undersigned is mindful that wrongful conduct by an opposing party can trigger equitable tolling. <u>Harris</u>, 209 F.3d at 330. For instance, equitable tolling is appropriate "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 96 (1990). However, "the[se] principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." <u>Id.</u>

Here, the record contains no evidence establishing that the defendant prevented the plaintiff from filing his FTCA complaint on time. While it appears that the plaintiff was unable to successfully mail a Notice of Claim to Wilson and Carpenter until February 28, 2019, because he was allegedly denied mail certification material on February 25, 2019, and allegedly provided the wrong address, he successfully mailed those on February 28, 2019. [Doc. 1-5]. There is simply nothing in the record to excuse the plaintiff's failure

11

to tender his complaint for mailing until March 24, 2019. Therefore, the plaintiff cannot show any extraordinary circumstances preventing him from filing his complaint on time, and the undersigned concludes he is not entitled to equitable tolling. Therefore, this complaint is due to be dismissed as untimely filed.

**Medical Negligence**

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

However, the FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). "The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

In the present case, the plaintiff alleges that the defendants' negligent acts occurred in the State of West Virginia. Therefore, West Virginia State law applies.

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

12

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required.  Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (W.Va. 2000).

Additionally, under West Virginia law, certain requirements generally must be met before a health care provider may be sued.   W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care at issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is

mandatory prior to filing suit in federal court. <u>See</u> <u>Stanley v. United States</u>, 321 F.Supp.2d 805, 806-807 (N.D.W. Va. 2004); <u>see also</u> <u>Starns v. United States</u>, 923 F.3d 34 (4th Cir. 1991) (holding West Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA).

Although the general rule in medical malpractice cases in West Virginia requires expert witnesses, expert testimony is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of law jurors by resort to common knowledge and experience." <u>Farley v. Shook</u>, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if the claimant or his or her counsel, believes that no screening certificate of merit is necessary because a cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of the screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W. Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." <u>Id.</u>  at

858.

Although the plaintiff appears to have served both Carpenter and Wilson with a Notice of Claim as required by W.Va. Code  § 55-7B-6 and raised the doctrine of res ipsa loquitor, his statement in lieu of a screening certificate is woefully inadequate. It simply states that they each breached the standard of care that a reasonable and prudent person would have exercised. He does not indicate what condition he believes was negligently treated, nor the specific basis for the alleged liability of  either medical provider.

The only diagnosis proved by a physician is that provided by Dr. Susan Long, who performed the esophagogastroduodenoscopy with biopsy at St. Joseph's Hospital on March 5, 2018. Her postoperative diagnosis was GERD, gastritis, pre-pyloric ulcer, duodenitis, perineal abscess and hemorrhoids. [Doc. 1-1 at 20]. Clearly, the diagnosis and treatment of these conditions are not within the understanding of lay jurors by resort to common knowledge and experience.  See O'Neil v. United States, 2008 WL 906470 (S.D. W. Va. Mar. 31, 2008) (finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience); also see Giambalvo v. United States, 2012 WL 984277 *4 (N.D.W. Va. Mar. 22, 2012) (finding that Johnson "is a rare exception to the 'general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witness.'").

Accordingly, the Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c), and his FTCA complaint should be

dismissed.

## IV.  RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the Plaintiff's complaint under the FTCA be **DISMISSED WITHOUT PREJUDICE** because it is both untimely and because he failed to comply with the requirements of West Virginia Code § 55-7B-6(c), thereby depriving this Court of jurisdiction. It is further recommended that the plaintiff's Motion for a Preliminary Injunction[4] **[Doc. 17]** be **DENIED AS MOOT.**

Within fourteen (14) days after being served with a copy of this report and recommendation, the plaintiff may file with the Clerk of Court **specific written objections identifying those portions of the recommendation to which objection is made and the basis for such objections**. A copy of any objections shall also be submitted to the United States District Judge. A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the**

---

[4] The plaintiff is seeking an Order from this Court requiring the "defendant" to send him to an otolaryngologist to receive medical attention and treatment for his ear, nose and throat. The undersigned notes that the plaintiff is proceeding under the FTCA, and accordingly, relief is limited to money damages; equitable relief is not available under the FTCA. Peck v. Blessing, 2006 WL 213736 (N.D.Cal.); Ajaj v. United States, 479 F. Supp.2d. 501 (DSC 2007).

**Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: September 18, 2020

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

17